**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**– TRENTON VICINAGE –**

| | |
|---|---|
| **COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC.<br>MAKEFIELD CROSSING – SOUTH CAMPUS<br>800 TOWNSHIP LINE ROAD, SUITE 325<br>YARDLEY, PA 19067,<br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.<br>410 TERRY AVENUE NORTH<br>SEATTLE, WA 98109,<br>Defendant.** | **Civil Action No.:** |

## COMPLAINT

Plaintiff, Community Association Underwriters of America, Inc. ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against the Defendant, Amazon.com, Inc. ("Defendant"), complaining against it as follows:

## PARTIES

1. Plaintiff is a California corporation with its principal place of business at the above-captioned address.

2. At all relevant times, Plaintiff was authorized to provide in New Jersey the insurance policy described herein.

3. At all relevant times, Plaintiff provided an in-force policy for property (*inter alia*) insurance to Southridge Hills Condominium Association, Inc. ("subrogor") in connection with (*inter alia*) a residential property at 22 Cotoneaster Court in Monmouth Junction, New Jersey ("subject property"), which subrogor was obligated to insure.

4. As a result of claims made on said policy in connection with the incident described below, Plaintiff became subrogated to certain recovery rights and interests of subrogor, i.e. for monies paid per the policy, including the claims being pursued via this action.

5. Upon information and belief, Defendant is a Delaware corporation with its principal place of business at the above-captioned address; upon further information and belief, Defendant at all relevant times regularly conducted business in, including shipping products into and out of, Monmouth Junction, New Jersey.

6. Upon yet further information and belief, Defendant was at all relevant times in the business of (*inter alia*) designing, manufacturing, selling, distributing, marketing, delivering, installing, and otherwise placing into the stream of commerce vacuum cleaners for domestic consumers, including the robotic vacuum cleaner at issue in this case – specifically a Tesvor 4000Pa Strong Suction Robot Vacuum Cleaner (hereinafter "the product").

**JURISDICTION AND VENUE**

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states, and the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

**STATEMENT OF FACTS**

9. Plaintiff repeats the facts and allegations stated in the prior paragraphs as though they were fully re-stated here.

10. Prior to June 16, 2024, the owner and/or occupant of the subject property purchased and received the product from Defendant, and put it into service there thereafter.

11. On June 16, 2024, the product malfunctioned, i.e. a failure within it occurred while it was in its docking station; this malfunction ignited a fire in the subject property, which caused damages thereto, as well as other expenses and harms to subrogor.

12. The damages to the subject property, as well as the imposition upon subrogor of additional expenses and harms besides, were directly and proximately caused by Defendant as is further and more fully described below.

13. Pursuant to the above-mentioned policy, Plaintiff paid monies in excess of $200,000.00 to subrogor for covered losses incurred in connection with the fire; Plaintiff thereby became subrogated to recover on the claims asserted in this action.

**COUNT I – NEGLIGENCE**

14. Plaintiff repeats the facts and allegations stated in the prior paragraphs as though they were fully re-stated here.

15. The above-described damages were the direct and proximate result of the negligence of Defendant – by and through its employees, agents, technicians, vendors, subcontractors, and/or servants – as is more specifically described below:

a. failing to exercise reasonable care by …

i. failing to manufacture, assemble, sell, design, transport, distribute, install, market, and/or place into the stream of commerce a properly functioning product, i.e. the product;

ii. failing to properly vet, inspect, install, and/or test the product and/or its component parts;

iii. failing to properly determine that the product and/or its component parts were not in compliance with applicable standards:

iv. failing to provide safe and adequate use and/or charging instructions with the product; and/or

v. designing, manufacturing, marketing, distributing, recommending, selling, and/or placing into the stream of commerce the product

when Defendant knew or should have known that it and/or its component parts would be unsafe for the reasons for which purchased.

b. failing to adequately instruct, supervise, and/or train suppliers, servants, employees, subcontractors, and/or agents as to the proper ways to perform the tasks described in subparagraph (a)(i.–v.);

c. failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks described in subparagraph (a)(i.–v.);

d. failing to properly monitor the work of all suppliers, agents, subcontractors, and/or employees during the performance of the tasks described in subparagraph (a)(i.–v.) to ensure compliance with applicable safety procedures;

e. failing to retain competent, qualified and/or able suppliers, agents, employees or servants to perform the tasks described in subparagraph (a)(i.–v.);

f. failing to perform the tasks described in subparagraph (a)(i.–v.) in conformity with the prevailing industry and governmental specifications and standards; and/or

g. violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to Defendant's undertakings in connection with the product's supply, design, assembly, sale, marketing, distribution and/or testing.

16. As a direct and proximate result of Defendant's above-described negligent and other standard-non-compliant acts and/or omissions, subrogor sustained and incurred damages to its property, as well as the imposition of other harms and expenses besides, in an amount in excess of $200,000.00.

17. Pursuant to the terms and conditions of the above-described policy, Plaintiff made payments to subrogor consistent therewith in regard to such damages; Plaintiff thereby became subrogated to the recovery claims asserted via this action.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant for damages in an amount in excess of $200,000.00, plus costs incident to this suit, delay damages and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT II – PRODUCTS LIABILITY (PER N.J.S.A. 2A:58C *ET SEQ.*)**

18. Plaintiff repeats the facts and allegations stated in the prior paragraphs as though they were fully re-stated here.

19. Plaintiff brings this action pursuant to N.J.S.A. 2A:58C *et seq.*, and pleads all claims against Defendant that are permitted under it.

20. Defendant knew and intended that its Tesvor 4000Pa Strong Suction Robot Vacuum Cleaners – including the product – would be used by members of the public, and knew of the specific uses, purposes and requirements to which such products would be put.

21. Defendant designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the product in a dangerously defective condition, which catastrophically failed due to a defect and/or malfunction.

22. Defendant designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the product in a defective condition, unreasonably dangerous to subrogor and its property.

23. Defendant knew, or should have known, that the product would, and did, reach its end-user(s) without substantial change in the condition in which originally selected and sold.

24. The product was not materially altered in any way that would affect the dangerous conditions caused and created by Defendant, and/or otherwise for which it is responsible.

25. On and at all times prior to June 16, 2024, the end-user(s) operated the product in

the normal, ordinary and intended manner, and for its normal, ordinary and intended purpose.

26. The aforementioned defects consisted of:

a. design defects;
b. manufacturing defects;
c. use-instructions and/or warnings defects; and/or
d. a failure to warn of the design, manufacturing, and/or component defects, and/or improperly provided warning and/or safe-use instructions.

27. Said defects were caused by the Defendant, by and through its employees, agents, technicians, vendors, subcontractors, distributors, suppliers, and/or servants acting in the course and scope of their assigned duties; more specifically, Defendant breached N.J.S.A. 2A:58C-2 *et seq.*, as follows:

a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free product, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;
b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the product free of defects;
c. failing to properly determine that the product was not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;
d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the product when Defendant knew or should have known that the product was unsafe and unfit for its intended use;
e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the product when it knew or should have known that the product would be inadequate for the reasons for which it was purchased;
f. designing, manufacturing, inspecting, assembling, distributing and/or marketing the product, which had unreasonably dangerous components that caused the product to catastrophically fail and/or malfunction;
g. designing, manufacturing, inspecting, assembling, distributing and/or marketing a dangerously defective product that Defendant knew or reasonably should have known exposed subrogor to an unreasonable risk of harm;
h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the product prior to introducing it into the stream of commerce;
i. failing to provide adequate and sufficient warnings and instructions with respect to the product, which rendered it defective and unreasonably dangerous;
j. designing, manufacturing, inspecting, assembling, distributing and/or marketing the product in a defective condition because its components failed,

rendering it hazardous and dangerous for its contemplated and intended use;

k. designing, manufacturing and distributing a dangerously defective product that Defendant knew or reasonably should have known exposed subrogor to an unreasonable risk of harm;

l. designing, manufacturing, inspecting, assembling, distributing and/or marketing a product that was not fit, suitable, or safe for its known intended purpose; and

m. manufacturing, inspecting, assembling, distributing and/or marketing the product with deviations from the design specifications, formulae, or performance standards of the manufacturer.

28. As a result of the damages directly and proximately caused by the unreasonably dangerous defects in the product, subrogor sustained and incurred damages as described herein in an amount in excess of $200,000.00.

29. As described above, Plaintiff became subrogated to certain recovery rights and interests of subrogor (i.e. for monies paid per the policy), including the claims asserted via this action.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant for damages in an amount in excess of $200,000.00, plus costs incident to this suit, delay damages and attorney fees, as well as for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

BY: *_/s/ Daniel J. de Luca_*

Daniel J. de Luca,
**ATTORNEYS FOR PLAINTIFF**
NJ ATTY I.D. NO.: 03845-1994
301 E. Germantown Pike, Suite 300
East Norriton, PA 19401
(215) 383-0081 (phone)
(215) 383-0082 (fax)
ddeluca@delucalevine.com

**Dated:** October 27, 2026